Next case on the call this morning is agenda number 19. Case number 106796 Newton Tractor Sales v. Kubota Tractor Corporation. Counsel may proceed. May it please the court, counsel, I'm Larry Lefever and I represent Newton Tractor Sales who filed a complaint in the circuit court of the Fourth Judicial Circuit in Fayette County seeking relief on the theory of a promissory estoppel. While that case was pending, the appellate court of the Fifth District entered its decision in DeWitt v. Fleming which held that promissory estoppel is not an appropriate affirmative cause of action and cannot be used for affirmative relief. The trial court in the Newton Tractor case, understandably relying on the decision in the Fifth District, ruled that Newton Tractor's claim could not proceed under a theory of promissory estoppel because the Fifth District had determined that that cause of action was not viable for a plaintiff. This is in spite of this court's ruling in the Quake Construction v. United Airlines case which specifically recognized the cause of action for promissory estoppel. The DeWitt v. Fleming case was published April 6, 2005. Meanwhile, on May 24, 2005, the First District appellate court promulgated and published its decision, Chatham Surgical Ltd. v. Healthcare Services Corporation, that specifically recognized and authorized a cause of action under a theory of promissory estoppel. So we have a direct conflict between the district courts. In determining what the law should be, which is what this court will do, the court can look at precedence, reason, rule of law, and situation sense for public policy. In this case, precedence is the most important element. First of all, we have the precedence of this court in the Quake Construction v. American Airlines. Secondly, in the DeWitt v. Fleming case, which was an interesting case because, first of all, it was a small claims case handled by a pro se plaintiff. On appeal, the pro se plaintiff who had won the case in the trial court did not file a brief. But the appellate court, Fifth District, determined to issue a published decision stating, in spite of the Quake Construction case, that promissory estoppel was not available as an affirmative cause of action. Justice Hopkins set forth a dissent. And in his dissent, he set forth numerous cases, Illinois cases, district court cases, that held that promissory estoppel was an appropriate cause of action for affirmative relief. Also, I believe that the Fifth District is the only appellate court in the state of Illinois that has ruled that promissory estoppel is not available as an affirmative cause of action. It seems that this issue also comes up very frequently in the federal courts, as interpreting Illinois law in a quick shepherdizing of the DeWitt v. Fleming case and the Chatham surgical LDD case will reveal that the appellate courts consistently recognize the split in the districts in the state of Illinois, but say the Supreme Court has held in the Quake Construction case that promissory estoppel is a valid cause of action, and they say we're going to apply Illinois law in that fashion. So if the court doesn't follow its own precedence here, it's going to disrupt the precedence relied on by many appellate court cases and the precedence relied on by federal cases interpreting Illinois law. If we decide, and you premised your entire argument on the fact that we have recognized promissory estoppel as a valid cause of action, affirmative cause of action, not just a defense, if we decide that issue against you, decide we haven't made that decision, do you lose? Well, then I think the court decides that we're going to decide this on the basis of whole cloth, and then you go into should we set forth an appropriate rule of law that says an agreed plaintiff who has justifiably relied on a promise to its detriment and damage should be given redress in the absence of a contract. So, yes, I don't think I lose just because you disagree with me that Quake Construction is precedence. I think I lose if you disagree with me that promissory estoppel should be a valid cause of action. But I think that's a decision this court would have to make if you think Quake Construction is not precedence. Can we decide, is it your intention for us to decide the issue here as well without a remand as to whether a proper, if we determine that promissory estoppel is a proper cause of action in the state of Illinois and that Quake so held, can we decide the issue here based on the record that we have as to whether a valid claim for promissory estoppel has been met? I believe we can. We have in our submission relied on our brief that we filed with the appellate court. In that brief, we have analyzed the elements of promissory estoppel and shown how our facts as set forth in defense to the motion for summary judgment would sustain that cause of action. We have an unambiguous promise that Newton Tractor would be the Kubota dealer. We have action in reliance in that we continued to sell Kubota products, that we did warranty service for Kubota products. And that was detrimental reliance because we have not been paid for the warranty service that we did. And we also make a claim for loss of damages. So I do believe the court could remand this to the state court for a trial by the trier of facts by both acknowledging that promissory estoppel is an appropriate affirmative cause of action and that the plaintiff in this case had sufficient information presented to the trial court in defense of the motion for summary judgment to sustain that, to overcome the motion for summary judgment. I think that Justice Hopkins' dissent also would give us some assistance in that regard. Justice Hopkins observed that in recent years the courts have expanded the use of the doctrine to enforce promises underlying otherwise defective contracts and promises made during the course of preliminary negotiations. He also found that in some cases the doctrine has been employed to provide a remedy for reliance upon offers subsequently withdrawn. Then he goes through a number of cases, and many of those cases are quite similar factually to our case, or at least arguably show why Newton Tractor has properly set forth facts sufficient to overcome the summary judgment. On those facts, just a moment. What was specifically the promise made to Newton by the Tractor Corporation? The promise made to the dealership was that they would be the Kubota dealer. And you think that Newton could reasonably rely upon that promise since there was no way the dealership could control who would be granted the new dealership? I think they not only reasonably relied, but they continued by words and actions of the representative of Kubota Tractor to be expected to rely. They continued to send customers to Newton Tractor to buy Kubota products. This went on for two months. They continued to send Kubota debt. The Kubota people, according to the submission in the trial court, continued to send warranty work to Newton Tractor. The Kubota people asked the representatives of Newton Tractor to take their Kubota products to the farm service show for demonstration at the farm service show. So not only did they make the promise, but they continued. And there's cases that say by words and actions you can also make a promise. It has to be unambiguous but not necessarily express. But the promises were actually made by the company itself. By who? I'm sorry, Judge. It was actually made by the... Jacobson made it on behalf of Kubota Tractor. But Kubota Tractor never made the promises. Well, Jacobson was their dealer rep at that point. He was their district rep and acting on their behalf. He was their agent. And his word was sufficient to bind the company to that promise? Once he made the promise and he acted in reliance on it and then continued to, by actions... By actions, which is reasonable to rely upon. I think it was, Judge. Perhaps that's a question of fact for the trier of fact, but certainly I think it was reasonable. He said at the time... First of all, Jacobson, the dealer rep was on the premises. They did an inventory. The inventory was for the purpose of transferring this equipment out of the inventory of the former owner to the inventory of Newton Tractor. At that meeting, he also induced the former owners to sign a document surrendering their dealership agreement. And that document says by its own terms that that is effective 30 days from the date of signing it. Even after 30 days, Jacobson continued to send customers to Newton Tractor, continued to ask them to do warranty service, and continued to ask them to take Kubota products to the Farm Progress Show. They had to have someone in the area who would provide that service? I don't see how that's a commitment that you would then get a dealership. Well, I think it's... We're acting in reliance, in a good faith reliance now. We trust this guy. In fact, one of the representatives of Newton Tractor says... The whole question was, do you trust him, a reasonable trust? Well, I think that's something for the trial of fact to decide. I don't think it's a matter of law. Obviously, you and I disagree on whether they acted reasonable. So I think that creates a question of fact. Was the trial court correct when they found that the allegedly fraudulent statements occurred after the asset purchase agreement between Vandalia and Newton was signed? Yes. And the contract between Vandalia and Newton specifically said, a contract between us will be completed only upon execution of the aforementioned agreement between Kubota and the undersigned, the undersigned being Newton? That's correct. Okay. So I believe we're going to hear that Newton hasn't suffered any detriment as a result of the claim to reliance because Newton had the option of rescinding the asset purchase agreement with Vandalia, right, if Newton did not obtain the Kubota dealership. And that argument is stronger if Jacobson on the 25th of July says, you're not getting it. Forget it. I'm going to take my Kubota equipment off your lot and be done with it. But he has them get into this, now this contract, this is a dealership with lots of lines of equipment, and he induces them to continue that for another 60 days. Now, are you going to upset the deal after 60 days? I mean, the practicalities of that, at that point, to go in and rescind a contract, which is what they had the right to do, I think he induced them to go deeper into the deal. In fact, way deeper into the deal. In fact, to the point where the deal was totally consummated by the time they came in in late September and said, we're taking this Kubota equipment out of here, you're not going to be the dealer. So I think the argument might have been valid if you would have pulled the rug out from under him on the 25th of July when he had the surrender of the prior dealership. I don't think the argument flies when you continue to act consistent with your promise for 60 days. Counsel, I heard you almost say the word contract. I'm sorry? I think you almost said the word contract. If I did, I don't think I meant to. Okay. I thought that would be the case. You don't maintain that at any point during these negotiations a contract existed? That is correct. That is correct. And I think as Justice Freeman set forth, I think it's a dual opinion, where he discussed promissory estoppel, which is additional precedence in my opinion, held that if there's an existing contract, an express contract, you can't have your relief under promissory estoppel. So that would bar us if there was a written contract with Kubota which there was not. Some of the promises that have been enforced in the state of Illinois by the cause of action of promissory estoppel include a promise that Citibank would cancel the existing wire. This is a case cited by Justice Hopkins. Skyline International Development versus Citibank. In that case, the customer asked that a wire transfer be made to an entity. A little while later, he changes his mind, calls up the representative of Citibank, and the representative says, well, cancel that existing wire. It didn't happen. The appellate court, I believe of the first district in that case, held that was sufficient promise to support a claim for promissory estoppel and a judgment on that basis. Another case cited by Justice Hopkins was the Derby Metals Utility Company versus Intercontinental Real Estate. In that case, the promise was that a residential subdivision would be developed and that Derby Metals would be used as a source of water and sanitary sewer utility services. And that case is also interesting because it points out that, and it discusses this concept, there's much made in the defendant's submission of it's a promise of a future act. This case discusses that and says in this kind of a situation, in the case for promissory estoppel, that a promise of a future act is actionable. The court held that the promises were actionable and a trial court's order of dismissal was reversed. The court specifically upheld the promise of future action as actionable. The court held that promissory estoppel is based on a promise, which is a declaration that one will do or refrain from doing something specified. Justice Hopkins also cited the case of Vagda versus Arthur Anderson and Company. In that case, the promise was that the employee would not be fired without good cause and not unless three warning policy of the employee handbook was followed. We believe these are similar types of promises and similar types of action and reliance and that the trier of fact should determine whether that action and reliance was reasonable. Newton Tractor thinks it is. Even the representative of Kubota set forth in his internal memos to his chain of command, he said that the dealership had transferred to Newton Tractor with no interruption of Kubota sales and service. So certainly the higher-ups within Kubota Corporation were aware of what was going on also. I think that sound public policy would favor sustaining this cause of action. I think that promises that causes inducement in this kind of a situation should be enforced and the court should follow its precedence or if the court doesn't think it has a precedence, that it should establish the precedence and remand this matter to the trial court to determine, by the trier of fact, the issues in the case. Thank you, Mr. Murphy. Thank you. Mr. Lubin. Thank you, Your Honor. May it please the court, Mr. Lefevre. My name is David Lubin and I'm counsel here for the defendants, Kubota Tractor Corporation, and Michael Jacobson. It's my first opportunity to address the Illinois Supreme Court. I consider it a privilege and appreciate your attention. Virtually the only issue that was addressed in any way in the petition for leave to appeal is whether this court should affirm the decision of the Fifth District in multiple cases that promissory estoppel is not available as a plaintiff's claim for relief. The defendants in this case submit that the Fifth District's position is consistent with sound public policy and, indeed, it should be affirmed by the court. The defendants also contend that aside from the issue of whether promissory estoppel should be recognized as a plaintiff's claim for relief, the court should bear in mind that the circuit court has already entered summary judgment on the grounds that there's insufficient proof or evidence of reasonable reliance and there's insufficient proof or evidence of damages. The circuit court did that in entering summary judgment on count two, the common law fraud claim. Those same elements would be necessary elements under the promissory estoppel claim. Therefore, one way or the other, defendants submit that summary judgment was properly entered in this case. The entry of summary judgment on count two was not effectively appealed. It was never addressed in the Fifth District briefing. It isn't addressed in the briefing before this case. Under Supreme Court Rule 341, any issues about the circuit court's entry of summary judgment on common law fraud have been waived. The Fifth District has held that promissory estoppel is not available as a plaintiff's claim in three consecutive cases dating back to 2003. The Fifth District's position on that issue has not been addressed. It hasn't been criticized. It hasn't been rejected by any other division of the Illinois Appellate Court. It also has not yet been addressed until today by this court. It's also significant that over the past five years, the Illinois General Assembly has not undertaken any action to review that position or to create a statutory cause of action for promissory estoppel. Counsel, why shouldn't the language in Quake, specifically that the plaintiff sufficiently alleged a cause of action for promissory estoppel, be read to mean that we have recognized this as a cause of action in Illinois? Justice Garmon, I will answer that in the same way that the Fifth District answered it, both in the underlying Kubota case and in DeWitt v. Fleming. The Fifth District looked at Quake construction as a case that had come up on Section 2615, motion to dismiss ruling. The Fifth District read that opinion, and I read it also, as not addressing the issue. There was no argument by the defendant in that case that in fact promissory estoppel should not apply. There was no public policy argument presented about why it would be inappropriate to recognize promissory estoppel in a context of assertions made in preliminary contractual negotiations. The issue that this court ruled on in Quake construction was simply were there sufficient facts stated to meet the elements of the claim. It was assumed, because there was no argument to the contrary, that a claim could be stated in Quake construction. But this court never addressed, because it wasn't presented with the issue, whether that was correct or not. And the Fifth District read Quake construction in that way. Therefore, the Fifth District said Quake construction isn't controlling. The Supreme Court wasn't trying to answer the issue was should promissory estoppel be available in the context of preliminary contractual negotiations. Quake construction is distinguishable from our case for other reasons. Quake construction involved a detailed letter of intent that actually set forth all of the elements of the contract. It was in the context of a bid. And the letter of intent included all of the terms for price, for scope of work. It set forth everything that the subcontractor would do. The ambiguity that the Supreme Court addressed was did the parties intend to be bound by the letter of intent, which was sufficient to be a contract, or did the parties intend to actually not be bound until there was an executed formal contract. So I don't believe that Quake construction reaches the issue that's presented to the court today. Mr. Lubin, is it your position, going back to how the common law of fraud count, summary judgment was granted and no reliance and no damages, is it your position if the 5th District had ruled differently and found promissory estoppel was a valid cause of action in the state of Illinois that it would be merely going back to the trial court for summary judgment on the promissory estoppel count? In light of the fact that they didn't appeal the common law of fraud count? My position would be that what the 5th District would have done, and in fact what this Court should do, is decide the legal issue of whether promissory estoppel is available. And if it disagrees with the public policy arguments that I hope to get to, and rules that yes, a plaintiff can frame a promissory estoppel cause of action, nonetheless, summary judgment would have been affirmed in the appellate court and should be affirmed here. There is a full record that the circuit court reviewed. The circuit court made a ruling that there was no reasonable reliance and no evidence of damages. Yeah, and my question goes specifically to the fact that, and I don't think you have a disagreement with counsel, that if we got to that point that this Court could certainly rule as to whether there was a valid cause of action for promissory estoppel, would this Court even have to look at the facts and the record with respect to that, or would it be your position, since the common law fraud count, which had the same facts associated with it, the same findings, or the findings of the trial court finding no reliance and no damages, that it's a fait accompli, that since those issues weren't appealed, we don't have to look at anything, but rather say there's been this finding, it hasn't been appealed, so promissory estoppel is not, in this case, a claim that can go forward. That is the position that I attempted to make clear in our briefs, and it is a position that the defendants maintain, yes, that there is no need for a remand for that reason. As far as, to finish up on prior precedent, Justice Freeman's concurrence in Doyle v. Holy Cross certainly does address promissory estoppel. The majority opinion in that case didn't reach the issue of promissory estoppel. And, yes, Your Honor. Exactly, Your Honor. You're anticipating my next point, which was your concurrence, which was certainly well-reasoned and reviewed the historical development of the theory, ultimately centered on the fact that you would not apply promissory estoppel in the event that you found that there was an enforceable contract. And that, I think, is consistent with the argument that I make about why it would be inappropriate to apply promissory estoppel in the context of preliminary contractual negotiations. Speaking of prior precedent, what about the Bank of Marion case? The Bank of Marion case, is that a? It's an Illinois Supreme Court case from 1974. It refers to the restatement of contracts addressing promissory estoppel. And the Court said, although there may be absent barbican for consideration, a person who makes a promise may nonetheless be bound by its terms. I haven't reviewed that case in the context of the briefing. It wasn't raised, so you've caught me a little unawares on that, Your Honor. It wasn't cited in Quate Construction. I think it was. Was it? I'm not aware of any prior case from this Court that clearly said promissory estoppel should be applied in the context of assertions made in preliminary contractual negotiations. Why do I argue that that's inappropriate? My argument is that formality is an extremely important aspect of contract law, particularly between businesses. Contract formation and contract enforcement principles promote clarity and certainty between parties engaged in commerce, and they avoid unilateral obligations. In the Doyle case versus Holy Cross Hospital, I listed the four elements that comes from Quake Construction, Incorporated, versus American Allies. Is not your position, then, that promissory estoppel is not a viable claim in Illinois? My position is that promissory estoppel is a viable theory in only two limited circumstances. The first limited circumstance, which is consistent with the Fifth District's ruling, is promissory estoppel can be raised as an affirmative defense when someone promises to withhold a known right, like charging interest on a debt or requiring a tenant to issue a written notice that they don't intend to renew a lease. The other party can say, don't worry about that. I promise not to hold you to it. What about a claim based on promissory estoppel? For a claim based on promissory estoppel, my argument would be that the only limited circumstances in which this Court should recognize such a claim would be three circumstances that Your Honor noted in your concurrence. Gratuitous promises, when someone promises to make a donation to a charity and the charity acts in reliance on that, charitable subscriptions, and certain types of intra-family promises. I've cited a couple of cases and I believe a background treatise that says that is the three contexts in which promissory estoppel historically was a recognized cause of action. That's a different context than the three Fifth District cases, including this case, before the Court. None of those cases involved parties who were negotiating over an extended commercial relationship. And that's the contract negotiation setting that this case arises to the Court under the facts of record. Imputing contractual stature to the comment, they will get the dealership or they will get the Kubota dealership, in effect creates a unilateral obligation on the part of Kubota. It would obligate Kubota to guarantee expenses incurred by the other party without any type of contractual control and without any type of contractual protections. At the same time, the other party, the dealer-applicant, would have no type of enforceable obligation at all to Kubota. And it would not be effectively the dealer-applicant will get a blank check to incur expenses and to engage in unregulated economic activities, which the law shouldn't encourage or incentivize. Recognized promissory estoppel in this situation also creates uncertainty. It creates uncertainty regarding the rights of the contracting parties and it creates uncertainty on the part of third parties. For example, was the asserted promise sufficiently clear or was it not? Was there any claim to reliance that was reasonable under all of the circumstances or was it not? What was Newton Tracker Sales authorized to do and what was it not? This type of uncertainty should not be promoted or encouraged by the law. It should be discouraged. Contract law should promote certainty by rewarding parties for entering into definite, specific, written contracts that fully spell out each party's rights and obligations to the other. That's the reason why I submit the Fifth District was correct, at least in the context of these sorts of comments made in the early stages of contractual negotiations. And that reasoning is consistent with later cases that say, in a similar vein, those types of comments are not specific, unambiguous promises. They are statements of predictions. Mr. Jacobson did not have the authority to bind Kubota. Even the principals of the plaintiff admitted that in their depositions. Mr. Emmerich, who was the principal of the selling dealership, said in his deposition, which is part of the record, I knew that the field rep couldn't award any contract. I knew that Mike Jacobson didn't have any authority. And, in fact, in the very same meeting where this alleged comment was made, alleged comment being they will get the dealership, Mr. Emmerich, who's on the other side, testified, well, Jacobson also told me that there hadn't been any decision made, that the dealer application was still pending and that at that time Kubota hadn't made a decision on it. So Mr. Emmerich also said in his deposition that he didn't believe Mr. Jacobson, that he thought Mr. Jacobson was trying to pull a fast one on him. Now, under those circumstances, I think the court clearly cannot find the existence of a clear and unambiguous promise. I'm jumping ahead a little bit, but it does kind of dovetail with my policy argument, that being that the Fifth District is correct that promissory estoppel as a matter of public policy shouldn't apply in this context. There's an argument made in Newton Tractor Sales' brief that you need, the court needs to recognize promissory estoppel as a weapon to prevent fraud and injustice. Well, with all due respect, Illinois law already has a cause of action that serves capably to prevent fraud and injustice. It's the common law fraud claim, fully recognized and beyond dispute. Why do we need another claim to address instances of fraud and injustice? NTS tried to assert a common law fraud claim before the circuit court. The circuit court granted summary judgment on the merits of that claim. That ruling wasn't appealed. The General Assembly has decided in some circumstances to expand claims in the fraud area. For example, the Consumer Fraud Act, the General Assembly decided that additional rights and remedies should be created as a matter of statute. That is certainly within the province of the Illinois General Assembly to determine as a matter of public policy. The General Assembly is the primary source that this court looks to in determining the state's public policy. The General Assembly has not to date taken any action to try to create a statutory cause of action for promissory estoppel. And I submit that for that reason, the decision of the 5th District on public policy grounds should be affirmed. I've addressed somewhat the waiver issue. I hope I've answered Justice Thomas's question. In the briefs, I also point out if you get beyond the waiver issue, there are a number of good arguments about why there was no actual reliance as the circuit court found. It is true that the dealer had already entered into the asset purchase agreement two weeks before this alleged comment was made. There was no reliance in buying the dealership for $200,000. There's an argument that the selling dealer relied on the alleged comment in signing a termination document. That's not consistent with the record. His testimony at the deposition was he didn't believe Mr. Jacobson. And moreover, the full record shows that he really had no other choice. He'd already sold the dealership. And the dealer arrangement between the former dealer and Kubota prohibited transfers. So it wasn't like somehow if Mr. Emmerich had said I'm not going to sign that termination agreement, you take that termination agreement and do what you want with it, the plaintiff would not have been any better off. It still would not be a Kubota dealer. And Vandalia Tractor couldn't somehow informally transfer its dealership rights over to the company that bought out its assets. It didn't have that right under the dealership agreement. And in fact, the dealership agreement specifically said in the event that you attempt to transfer, that's grounds for termination anyway. So one way or the other, the Vandalia dealership was going to terminate. And Mr. Emmerich's reliance really was not material. Moreover, he didn't need any approval from the Newton Tractor Sales folks to do the reliance. Whether they said sign the document or not had no bearing at all. They didn't have any contractual right to grant approval or otherwise. There's one other point I wanted to make about the asset purchase agreement. That asset purchase agreement was not contingent on Kubota's approval. If you read the sites to the record, it was specifically contingent on the approval of a different OEM of New Holland. And that's because New Holland owned 80% of the plaintiff's company until the plaintiff bought it out for $575,000. So New Holland had to approve, not Kubota. And in fact, Kubota didn't even know that the asset purchase agreement was entered into until this meeting. In addition, Mr. Jacobson wasn't there to transfer inventory to the new dealer. He was simply doing an inventory audit because this was a floor plan. We had a security interest in all of those tractors. So this wasn't a plan to transfer tractors over. Vandalia Tractor was still our dealer at that time. And finally, and I will quit, the record I don't think will show that Mr. Jacobson directed any work to the plaintiff. What happened was people would come in and would get warranty work done. People would come in and maybe ask to buy stuff. But I don't think there was some sort of direction by Mr. Jacobson for the company to continue to do work. Kubota and Mr. Jacobson asked the court to affirm the decision. Your time has been up for several minutes. Thank you, Your Honor. In the appellate court, in the briefing of the appellate court, we challenged the court's findings that we did not have proper reliance and did not have damages. So I think that was not waived in any way. We asserted the affirmative cause of action. We picked the best one of the ones that have been pledged in the trial court, framed the issue, and brought it before the appellate court. The one thing is this warranty work. We've never been paid for the warranty work. And I think that's about $48,000. I forget the exact number. But what kind of better action and reliance can you have is to go out and do work, warranty work that's to be paid for by Kubota. We do it because we're the dealer or we're told we're going to be the dealer, and then we don't get paid for it. That's damages. That's action and reliance. That's reasonable reliance. So I think it's up to the trier of fact to determine, was that reliance reasonable? Was there damages? And if so, how much? And do we have facts sufficient to sustain all of the other elements of the cause of action and promissory stop? Thank you. Thank you, sir. Case number 106798 will be taken under advisement.